UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARIA SIEROTOWICZ and
STANISLAW SIEROTOWICZ,

               *Plaintiffs,*             **MEMORANDUM & ORDER**
                                                           **04-CV-3148 (NGG) (LB)**
       -against-

NEW YORK CITY HOUSING AUTHORITY,             **NOT FOR PUBLICATION**
LEASED HOUSING DEPARTMENT, OFFICE
OF INSPECTOR GENERAL FRAUD UNIT and
OFFICE OF ADMINISTRATIVE HEARINGS,

               *Defendants.*
-------------------------------------------------------X
GARAUFIS, United States District Judge.

      The Plaintiffs in the above-captioned matter, Maria Sierotowicz and her father, Stanislaw Sierotowicz, have brought suit against the Defendants, the New York City Housing Authority ("NYCHA") and various offices within NYCHA (collectively "Defendants"), alleging discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3613. The Defendants had moved for judgment on the pleadings and to dismiss the amended complaint pursuant to Rule 12 (c) of Federal Rules of Civil Procedure. The Defendants assert that Plaintiffs' amended complaint[1] fails to state a claim upon which relief may be granted and that Plaintiffs' claims are time-barred in part. For the reasons stated below, the Defendants' motion to dismiss is granted. The Plaintiffs' amended complaint is dismissed in its entirety.

**I.**     **Legal Standard**

      In considering this motion, the court is mindful that because the Plaintiffs are proceeding pro se, it is "obliged to construe [the] pleadings and papers liberally." LaBounty v. Adler, 933

---

[1] This court construes the Plaintiffs' "Supplemental Pleading" in conjunction with Plaintiffs' original complaint as Plaintiff's Amended Complaint.

F.2d 121, 122 (2d Cir. 1991). Indeed, a pro se litigant's submissions are to be interpreted "to raise the strongest arguments they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

The Defendants have brought their motion to dismiss as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Such a motion is "evaluated under the same standard as a Rule 12(b)(6) motion to dismiss." Nicholas v. Goord, 430 F.3d 652, 658 (2d Cir. 2005) (citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994)). In determining a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. Grandon v. Merrill Lynch & Co.,147 F.3d 184, 188 (2d Cir. 1998). A court should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The question to be answered is not whether the Plaintiff will ultimately prevail on his claim, but whether the Plaintiff is entitled to offer evidence in support of the allegations contained in the complaint. Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 62 (2d Cir. 1997).

## II.     Background

### A.     *Section 8 Housing Program*

Pursuant to the Housing and Community Development Act of 1974 ("Housing Act"), the United States Department of Housing and Urban Development ("HUD") administers the federal program known as the Housing Choice Voucher Program, or the Section 8 Housing Program. See 42 U.S.C. § 1437f. The Section 8 Housing Program is administered by a local public housing agency ("PHA"). In New York City, NYCHA is the PHA that administers the Section 8

program, with housing assistance funding provided by HUD. See 24 C.F.R. § 982.1(a)(1).

The tenant-based Section 8 housing program, through which the Plaintiffs were provided subsidized housing, works as follows. The tenant/aid recipient selects an appropriate apartment, and, after approving the tenancy, "the PHA enters into a contract to make rental subsidy payments to the owner to subsidize occupancy by the [tenant(s)]." 24 C.F.R. § 982.1(b). The tenant enters into a lease with the owner of the apartment. The PHA and the owner enter into a separate contract, known as a Housing Assistance Payments (or HAP) contract, under which the PHA directly pays the owner a monthly rental subsidy. See 24 C.F.R. § 982.1; see also "Tenant Based Vouchers," available at  http://www.hud.gov/offices/pih/programs/hcv/tenant.cfm (last visited 3/20/06).

Under the regulatory statutes governing the Section 8 housing program, a tenant has the right to "claim that illegal discrimination because of race, color, religion, sex, national origin, age, familial status or disability prevents the family from finding or leasing a suitable unit with assistance under the program." 24 C.F.R. § 982.304. In such circumstances, the PHA "must give the family information on how to fill out and file a housing discrimination complaint." Id.

NYCHA's Section 8 Existing Housing Program Occupancy Policy ("Occupancy Policy") establishes the standards and policies which govern tenancy and assistance awards under the Section 8 program. (See Ex. B attached to Declaration of Donna M. Murphy in Support of Defendant's Motion to Dismiss the Amended Complaint ("Murphy Decl.")). Relevant parts of the Occupancy Policy explain that the only permissible tenants of a Section 8 subsidized apartment are the lessee and "authorized original family members who are continuously listed on the tenant's Affidavit of Income as part of the family composition." (Occupancy Policy, at 1).

3

"Except for births, no person may join a tenant's household, unless the tenant's requests his/her inclusion in writing and written permission is granted by the Housing Authority." (Id.). The Occupancy Policy further explains that a lessee has the option of requesting permanent, conditional or temporary permission for a person to join the lessee's household. Permanent permission is granted only to (1) a spouse who marries a lessee or an authorized family member; (2) the registered domestic partner of a lessee or authorized family member; or (3) a child legally adopted by a less or authorized family member. A child born to a lessee or authorized family member receives automatic permanent permission. (Id.). Conditional permission can be granted to a person who falls within the Occupancy Policy's definition of "family," which includes a blood relative, so long as the additional person does not have an another residence. (Id. at 3). NYCHA has authority to deny conditional permission on the grounds of overcrowding, i.e. if the additional person renders the apartment overcrowded. (Id.). Temporary permission is generally granted for a period of time not to exceed one year. The landlord's approval is required for NYCHA to grant permanent, conditional or temporary permission of an additional occupant in the subsidized apartment. (Id. at 3-4).

When a lessee is denied permission for an additional person to join the lessee's household, the lessee may challenge that denial at an "informal conference with an employee, at the level of assistant manager or higher of the Housing Authority's Leased Housing Department." (See id. at 5).

*B.  Facts*

The following facts are culled from the Plaintiff's pleadings and attachments thereto, and are deemed true for the purposes of this motion. Maria Sierotowicz is a fifty-nine year-old

4

woman who currently resides in a Section 8 subsidized apartment located at 189 Ross Street, Brooklyn, N.Y. 11211 ("the apartment"). Maria Sierotowicz's mother, Anna Sierotowocz, was awarded a Section 8 subsidy in May 1984 for the one-bedroom apartment, #3C, to be occupied by her and her daughter. (See Ex. A. to Plaintiffs' Response dated May 15, 1995). They moved into the apartment on June 1, 1984. (Plaintiff's Statement of the Case attached to Complaint, at 7). In September of 1994, Maria's father, Stanislaw Sierotowicz, came to the United States from Poland and took up residence in the apartment. (Id. at 8). At that time, Stanislaw Sierotowicz was added to the "Certificate of Family Participation Number 46154" that was previously assigned to Maria and Anna Sierotowicz. (Id. at 7-8). Stanislaw returned to Poland in September 1986, and was absent from the United States until he returned fourteen years later in August 2000. (Id. at 8). In November 1990, Anna Sierotowicz passed away; Maria remained in the apartment after her mother's death and continued to receive the Section 8 subsidy for the apartment. (Id. at 8).

When Stanislaw returned to the United States in 2000, he was eighty-one years old and moved in with his daughter so that she could care for him. In August 2000, Maria Sierotowicz submitted requests for permanent permission for her father to join her Section 8 household. (See Pl.'s Supp. Pleading Ex. B, at 4, 5). On February 21, 2003, plaintiff Maria Sierotowicz was notified in writing that her landlord objected to her request for permission to add her father as a tenant to the apartment, and her request was denied on these grounds. (Pl.'s Supp. Pleading Ex. B, at 2). Pursuant to Section 8 Occupancy Policy, Stanislaw was not a permissible additional tenant as he was not the spouse, registered domestic partner, or legally adopted child of the lessee, his daughter Maria. Maria's request was also denied on the grounds that the additional

5

tenant would render the subsidized apartment overcrowded. The overcrowding finding appears to be grounded in the fact that, under NYCHA Section 8 policy, a parent and child of different genders are not permitted to share a one bedroom apartment. (See Pls.' Resp. Ex. A, at 16).

On September 16, 2002, NYCHA issued to Maria Sierotowicz its first Notice of Termination of Section 8 Subsidy based on the finding that she had failed to provide proof of income of all family members living in her household. (Pls.' Affidavit/Affirmation dated January 7, 2005 ("Pls.' Aff.") annexed to Pls.' Notice of Motion Against Dismiss, Ex. A, at 7). The Plaintiff denied this allegation and requested a hearing on the matter. (See Pl.'s Compl. at 10). The outcome of this hearing, which lasted until September 27, 2003, is unclear based on the pleadings.

On February 23, 2004, a second Notice of Termination of Section 8 Subsidy was issued by NYCHA against Maria Sierotowicz alleging that she had violated Section 8 regulations. (Pls.' Supp. Pleading Ex. C, at 1). Specifically, NYCHA charged:

> You have not used your apartment under the Section 8 Program solely for residence by your family during the period from year 2000 to the present, in that you have allowed Stanislaw Sierotowicz to reside in your sect. 8 apt. without authorization.

(Id.). Maria Sierotowicz requested a hearing to challenge the termination of her benefits; a hearing was held before an Impartial Hearing Officer on June 17, 2004, July 21, 2004 and September 14, 2004. (See Pls.' Supp. Pleading Ex. C, at 3-5; Pls.' Aff. Ex. A, at 5-6). The Hearing Officer issued a decision on November 11, 2004 in which she determined that the charges of violating Section 8 policy brought against Maria Sierotowicz were not sustained. (Pls.' Aff. Ex. A, at 6). The officer explained, "[Maria Sierotowicz] is not culpable in this

instance of allowing her father to reside without authorization, when she has done everything she could to obtain authorization and there is no apparent reason why it should have been refused (a private landlord subject to Rent Stabilization may not refuse as a matter of 'standard procedure')." (Id.). The Plaintiffs' Section 8 subsidy was accordingly continued. (Id.; see also Murphy Decl. Ex. B).

Prior to that ruling, on March 18, 2003, Maria Sierotowicz filed a discrimination complaint against NYCHA with the HUD's Office of Fair Housing and Equal Opportunity ("HUD/FHEO"). HUD/FHEO dismissed the complaint and issued a right to sue letter to the Plaintiff on September 21, 2003. (Pls.' Compl. at 10). In the initial complaint in the present action, dated June 29, 2004, Maria Sierotiwicz notes that a second discrimination complaint filed with HUD/FHEO against NYCHA on April 20, 2004 was still pending. (See id.).

C. *Allegations*

Although the Plaintiffs' allegations are somewhat difficult to discern, I will make every attempt to address all of the charges the Plaintiffs appear to allege. The gravamen of the complaint is a cause of action for discrimination in violation of the Fair Housing Act. In their Supplemental Pleading, the Plaintiffs themselves explain their charges as follow:

> In an original pleading, plaintiffs alleged that they have been discriminated by defendant' [sic] NYCHA on the basis of race, color, sex, family status and false record of disability. In this, supplemental pleading plaintiffs substitute their allegations against NYCHA as defendant stating that they were discriminated and harassed mostly by the reasons of frauds committed and continued in their Section 8 Programs over the years. (1984 to 2004, . . .) These frauds have been concealed by defendant' [sic] NYCHA and its conspirators. Therefore, this pleading includes violations and charges refering [sic] to fraud, conspiracy and corruption statutes as crime, under Title 18 U.S.C. sections 241, 242, 245, 246, 248, 285-287, 1001 and section 232 of Title 31 U.S.C. . .

7

(Pls.' Supp. Pleading, at 2) (emphasis in original). Thus, this court finds that the Plaintiffs have alleged a discrimination claim on several grounds, including race, sex, family status, and disability. The Plaintiffs have also attempted to indict the defendants on federal criminal conspiracy charges under certain sections of Title 18 of the United States Code[2], alleging fraudulent conduct on the part of Defendants. (See Pls.' Resp. ¶¶ 4-6). The Plaintiffs have also raised a potential *qui tam* action under 31 U.S.C. § 3730(b), the False Claims Act. (See id. at 7).

### III. Discussion

#### *A. Plaintiffs' Attempt to "Indict" Defendants on Criminal Charges Fails*

Notwithstanding the Plaintiffs' claims to the contrary, as private individuals they do not have the right to prosecute the Defendants for violations of federal criminal statutes. See 28 U.S.C. § 516; In re Persico, 522 F.2d 41, 54 (2d Cir. 1975) ("The Executive Branch specifically, the Attorney General has the power to conduct federal criminal litigation. It is an executive function within the exclusive prerogative of the Attorney General.) (internal quotation marks and citations omitted); see also Bodell v. Walbrook Ins. Co., 119 F.3d 1411, 1419 (9th Cir. 1997) ("The agency can no more force the United States Attorney to bring a prosecution than can a private party. . . . A criminal action vindicates the rights of the United States, not of any agency or party aggrieved by the misconduct."); United States ex rel. Barmak v. Sutter Corp., 2002 WL 987109, *6 (S.D.N.Y. 2002) ("First and foremost, the anti-kickback statute is a felony criminal

---

[2] The court notes that some of the statutes cited by the Plaintiffs bear no relevance to the instant matter, e.g. 18 U.S.C. § 248 (*Freedom of access to clinic entrances*), and some are not even actual statutory provisions, e.g. 31 U.S.C. § 232. The Plaintiffs also refer to various other statutes throughout their motion papers, including 42 U.S.C. § 2000a, and 42 U.S.C. §§ 1985, 1986. None of these statutes, however, authorize the prosecution of federal criminal laws by private individuals.

8

statute. There is absolutely no private right of action provided and the statute is to be enforced by the Department of Justice ('DOJ') through the appropriate United States Attorneys' Office.").

Therefore, the Plaintiffs' causes of actions alleging conspiracy and fraud brought pursuant to federal criminal statutes are dismissed.

### B.  *Plaintiffs Discrimination Claims Fail*

Maria and Stanislaw Sierotowicz claim that NYCHA has discriminated against them in violation of the FHA, which prohibits discrimination based on race, color, religion, sex, familial status, or national origin.  See 42 U.S.C. § 3604.  Although the Plaintiffs have repeatedly declared in their motion papers that NYCHA and the other defendants have discriminated against them and conspired to deceive them, and despite the myriad of documents submitted in support of their accusations, there are no factual allegations in the record which can support such a claim.  Indeed, when the Maria Sierotowicz challenged NYCHA's decision to terminate her subsidy, a proper hearing was held and it was determined that her subsidy should continue.  These facts, and the others alleged and supported by the documentary evidence, do not give rise to a claim of discriminatory conduct on the part of the Defendants.  The Plaintiff's discrimination claims are therefore dismissed pursuant to Fed. R. Civ. P. 12(b) for failure to state a claim.

### C.  *Plaintiffs' Fraud Claims Fail*

The Plaintiffs also claim that fraud was perpetuated against them by the Defendants.  In alleging fraud, the Plaintiffs rely incorrectly on the text of an order issued by Judge Mukasey that transferred this case from the Southern District of New York to this District.  (See Transfer Order of Judge Mukasey dated July 8, 2004 (Pls.' Supp. Pleading Ex. A, at 1-2)).  In the Transfer Order, Judge Mukasey referred to the Plaintiffs – "Maria *and* Stanislaw Sierotowicz" – as

9

"recipients of Section 8 housing in Brooklyn, New York." (Id.) (emphasis added).  Mukasey also described the suit in the following manner: "Plaintiffs seek an Order enjoining defendants from unlawfully terminating their Section 8 subsidy." (Id.).  Mukasey did not address the merits of the Plaintiffs' claims, but simply transferred the case to the Eastern District.

That Judge Mukasey incorrectly referred to both Plaintiffs as Section 8 subsidy recipients, where it would have been more accurate to label only Maria as the subsidy recipient, does not in any way establish that Stanislaw was entitled to an additional Section 8 award of his own.  The Plaintiffs appear to believe as much, as they allege that one incident of the fraud committed against them is that Stanislaw was entitled to a Section 8 award in his name but that his identity, i.e. his name, social security number and eligibility status, was somehow "stolen from him" and his award was passed to different individual.  (See Pls.' Affidavit in Opposition, at 29-30).  There is, however, nothing in the record to support this allegation.

Also in connection with Judge Mukasey's Transfer Order, the Plaintiffs' seem to argue that Mukasey's characterization of their suit as seeking an order enjoining defendants from *unlawfully* terminating their Section 8 subsidy establishes that the Defendants in fact did terminate their subsidy in violation of the law.  Of course, the language of the Transfer Order does no such thing, and, as mentioned infra, the record establishes that Maria Sierotowicz's subsidy was in fact continued and not terminated.  Thus, any allegations of fraud stemming from the Transfer Order are dismissed for failure to state a claim.

The Plaintiffs' second asserted incidence of fraud arises from a "split-lease" arrangement allegedly established by NYCHA.  In several of the Landlord-Tenant Lease Agreements executed between Maria Sierotowicz and the owner of the subsidized apartment in which she resided,

there are notations to "see split on page #4" above the proviso that the tenant's rent shall be subject to change by reason of change in the tenant's family income, family composition, etc. (See Pls.' Resp. Ex. C, at 1-4). The Plaintiffs' maintain that these "split leases" are proof that the Defendants "entered in two apartment' [sic] contracts and double payment." (Pls.' Compl. at 19). In other words, the Plaintiffs allege that the split leases prove that the Defendants were receiving double payment for the Sierotowocz's apartment, which constitutes fraud against the Plaintiffs and the United States.

Again, there is no factual support for these allegations. The record shows that the "splits" in rent reflect annual changes in Maria Sierotowicz's share of the rent based on NYCHA's determinations of annual family income. (See Pls.' Aff. Ex. B; Murphy Decl. Ex. B). There is no factual basis for the fraud claim arising from the so-called split-lease arrangement, and any such claim is dismissed for failure to state a claim upon which relief can be granted.

### D. *Plaintiffs'* Qui Tam *Suit Fails*

In their papers submitted in opposition to the Defendants' motion to dismiss the amended complaint, the Plaintiffs articulate a *qui tam* action on behalf of the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*. Although this claim was not clearly expressed in the Plaintiffs' amended complaint, the court will nonetheless address the charge because the Plaintiffs are pro se litigants and the court is therefore obligated to liberally construe their pleadings.

The FCA provides for liability when any person "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." See 31 U.S.C. § 3729(a)(1). Pursuant to 31 U.S.C. § 3730(b), a

private individual (known as a relator) "may bring a civil action for a violation of section 3729 for the person and for the United States Government." Such an action "shall be brought in the name of the Government." 31 U.S.C. § 3730(b). The subsequent provisions of section 3730 establish several procedural requirements which must be met in order for a private person to bring a FCA claim on behalf of the Government. See id. §§ 3730(b)(2)-(5).

The Plaintiffs' attempt to bring a *qui tam* action pursuant to the FCA cannot survive the Defendants' motion to dismiss for several reasons. First, they have not followed the procedural requirements set forth in section 3730, including the requirement that the action be brought in the name of the Government. More importantly, they have failed to allege facts that would support a cause of action under the False Claims Act. The heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to FCA claims. Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-77 (2d Cir. 1995). Under Rule 9(b), the Plaintiffs must state with particularity the specific statements or conduct giving rise to the fraud claim. See Fed. R. Civ. P. 9(b); Twombly v. Bell Atlantic Corp., 425 F.3d 99, 107 (2d Cir. 2005). Even construing the amended complaint liberally and drawing all reasonable inferences therefrom in the Plaintiff's favor, they have failed to meet the standard of heightened pleading required in the fraud context. Moreover, there is a lack of factual support for the allegation that the Defendants presented to the United States government a false or fraudulent claim for payment, with knowledge of its falsity or fraudulence. See United States ex rel. Taylor v. Gabelli, 345 F.Supp.2d 313, 329 (S.D.N.Y. 2004) (explaining required elements under FCA).

As Plaintiffs' have failed to properly submit or allege a *qui tam* action pursuant to the False Claims Act, the Defendants' motion to dismiss this claim is granted.

**IV.** **Conclusion**

For the reasons stated above, the Plaintiffs' Amended Complaint is hereby dismissed for failure to state a claim because "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." Conley, 355 U.S. at 45-46. As the Plaintiffs' have already amended their complaint once, and in light of the fact that the Plaintiffs have submitted a great deal of documentary evidence and several affirmations/affidavits in conjunction with their initial and amended complaint, the court will not grant the Plaintiffs leave to further amend the complaint. The Plaintiffs' claims are therefore dismissed in their entirety with prejudice. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: March 27, 2006                              /s/
       Brooklyn, N.Y.                        NICHOLAS S. GARAUFIS
                                                             United States District Judge